# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

| | | |
|---|---|---|
| **ELLA MEDLEY, individually and on behalf of all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 1:17-cv-00003** |
| **v.** | ) ) | **Judge Aleta A. Trauger** |
| **SOUTHERN HEALTH PARTNERS, INC.,** | ) ) ) | |
| **Defendant.** | ) ) | |

## <u>MEMORANDUM</u>

This is an action brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for the recovery of unpaid or improperly calculated overtime wages, liquidated damages, interest, attorneys' fees and costs. The plaintiff, Ella Medley, brings suit individually and on behalf of all other similarly situated employees of the defendant, Southern Health Partners, Inc. ("SHP"). Now before the court is Medley's Motion for Conditional Certification and Court-Authorized Notice (Doc. No. 16) (hereafter, "Motion to Certify"), in which the plaintiff seeks leave to pursue this case as a collective action, under 29 U.S.C. § 216(b), and a court order directing SHP to provide her with a list of the names, last known addresses, and last known telephone numbers of all similarly situated current and former employees who worked for SHP during the preceding three years. The plaintiff also requests approval of her proposed Notice of this collective action to be mailed to that list of employees so that they can choose whether to opt in as plaintiffs in this litigation.

In response, besides opposing the Motion to Certify on its merits, defendant SHP has

filed a Motion to Strike certain statements in the plaintiff's Declaration and an exhibit attached to her Motion to Certify. (Doc. No. 20.)

Both motions have now been fully briefed and are ripe for review. For the reasons set forth herein, the court will deny the Motion to Strike as unauthorized by the Federal Rules of Civil Procedure. The court nonetheless finds it appropriate to exclude from consideration the same evidence the defendant seeks to strike. The court will also deny the Motion to Certify, on the basis that the plaintiff has not provided sufficient evidence of the existence of similarly situated employees.

## I.    MOTION TO STRIKE

The defendant moves to strike two paragraphs from Medley's Declaration (Doc. No. 17-1) and the entirety of Exhibit B (Doc. No. 17-2), submitted by Medley in support of her Motion to Certify. SHP argues that the exhibit and portions of the Declaration constitute hearsay, double hearsay, "and/or inadmissible speculation without evidence of any personal knowledge" (Doc. No. 21, at 4) and, as such, may not be considered by the court in ruling on the Motion to Certify. Medley opposes the motion, arguing that hearsay rules do not apply to motions for conditional certification and that the statements in her declaration are based on personal knowledge.

Neither party actually addresses the standard of review applicable to a motion to strike or suggests the basis for the court's authority to strike in this context. Rule 12(f) of the Federal Rules of Civil Procedure provides only that a "court may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). The Sixth Circuit has recognized that "[t]he Federal Rules of Civil Procedure do not require the district court to remove documents other than pleadings from the record in a case." *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 375 (6th Cir. 2006). The court will

therefore deny the Motion to Strike. *Accord id.* ("The district court correctly decided not to strike the exhibits attached to defendants' dispositive motion. Under Fed. R. Civ P. 12(f), a court may strike only material that is contained in the pleadings. . . . Exhibits attached to a dispositive motion are not 'pleadings' within the meaning of Fed. R. Civ. P. 7(a) and are therefore not subject to a motion to strike under Rule 12(f).").

SHP, however, in its Response to the plaintiff's Motion to Certify, also challenges the admissibility of the same evidence for purposes of ruling on the Motion to Certify. The court will address those arguments within the context of ruling on the Motion to Certify.

## II.    MOTION TO CERTIFY

### A.    Factual and Procedural Background

Ella Medley is an adult resident of Lawrenceburg, Tennessee and has been employed by SHP from September 2013 through the present. (March 22, 2017 Decl. of E. Medley, Doc. No. 17-1 ("Medley Decl.") ¶ 4; Compl. ¶ 4.) SHP is a corporate entity doing business in Wayne County, Tennessee, and is a "covered" employer under the FLSA, 29 U.S.C. § 203(d). (Compl. ¶¶ 7, 8.) All of SHP's wage and hour and related employee-compensation policies "are and were centrally and collectively dictated, controlled, and ratified." (Compl. ¶ 10.)

SHP provides nursing services to inmates in over 200 city and county detention centers located across fourteen states, including thirty-two facilities within Tennessee. (May 16, 2017 Decl. of K. Utz, Doc. No. 22 ("Utz Decl.") ¶ 3; Medley Decl. ¶ 2.) Medley is a licensed practical nurse ("LPN"). (Medley Decl. ¶ 2.) She is employed by SHP to work at the Wayne County Jail in Waynesboro, Tennessee. (Medley Decl. ¶ 3.) The Wayne County Jail is the only facility in which she has worked for SHP. (Utz Decl. ¶ 10.) Throughout the course of her employment, Medley has performed work in excess of forty hours per week on a regular and repeated basis.

(Compl. ¶ 15.) She estimates that she works, on average, fifty to sixty hours per week. (Medley Decl. ¶ 7.)

SHP pays her overtime under its Fluctuating Overtime Policy. (Compl. ¶ 16.) Medley understands this to mean that, instead of getting one and one-half times her regular pay for overtime, she only gets "half time" for the number of hours she works overtime. (Medley Decl. ¶ 13.[1]) As a result, she claims, her compensation is significantly less than it would be if she were paid overtime at one and one-half times her regular pay rate. (Medley Decl. ¶ 15.)

SHP's Fluctuating Overtime Policy, contained in its Employee Manual, states as follows:

SHP non-exempt LPN salary employees will be paid based on a fluctuating work week. The salary amount will cover all hours worked during the week. Fluctuating half-time rate compensation will be paid for all hours worked over 40 in the work week. These half time hours will be paid using the Department of Labor Fluctuating Overtime Formula. For example, an employee with a weekly salary of $600.00 who works 50 hours in one week will be paid $600.00 for the 50 hours and an additional $60.00 as the half time payment for the 10 fluctuating overtime hours. The Department of Labor formula for this calculation is:

(Salary) / (Hours worked during week) = (New Hourly Rate)
(New Hourly Rate) / (2) = (Half time rate due)
(Half Time Rate Due) * (Hours Over 40 in Week) = Fluctuating Overtime Amount Due

(Employee Manual, Doc. No. 17-2, at 36.)

Medley alleges that, as an SHP employee, she is "given a set number of days off," and, if she exceeds her accrued amount of paid time off ("PTO"), her pay is deducted. (Medley Decl. ¶ 18.) She also alleges that, under the Employee Manual, the company provides unpaid bereavement leave under certain circumstances. (Medley Decl. ¶ 19.) The Manual also states that "[e]mployees who serve jury duty are paid the difference between their regular pay and the juror's fee they receive, instead of being paid their full pay." (Medley Decl. ¶ 20.) Medley does not allege that she ever took bereavement leave or jury duty leave.

---

[1] This paragraph contains no enumeration, but it appears to be the thirteenth paragraph.

The plaintiff further alleges that SHP did not accurately record her hours in an effort to reduce its overtime obligations under the FLSA. More specifically, she alleges that her supervisor, Darrell Ragan, advised her "to only record/log eight (8) hours per day regardless of how many hours I work because that is all the company is contracted for." (Medley Decl. ¶ 8.) She further alleges that Ragan "routinely edits [her] time records to reduce or even eliminate all of [her] overtime." (Medley Decl. ¶ 8.) She has objected, but Ragan essentially told that her she had no choice: "It's this way everywhere. If you want to work off the clock, it's your own problem. I work off the clock all the time." (Medley Decl. ¶ 9.) She claims "upon information and belief" that SHP treats other similarly situated employees the same, as a result of which she and the similarly situated employees have suffered lost wages. (Compl. ¶¶ 26–28.) She avers in her Declaration: "I personally knew other employees of the Company who were also forced to work off the clock and were told to falsify their time records by clocking out while they were still working." (Medley Decl. ¶ 10.)

She also states that she is "aware of postings on websites such as Indeed.com that, if true, show that this practice of forcing employees to work off the clock was widespread in the Company." (Medley Decl. ¶ 11.) She states that these postings can be found at https://www.indeed.com/cmp/Southern-Health-Partners,-Inc./reviews. (Medley Decl. ¶ 11; *see also* Doc. No. 17, at 7 n.1.) These comments are attached as Exhibit E (Doc. No. 17-5) to the plaintiff's Motion to Certify.

The reviews of SHP as reflected in Exhibit E are mixed, with an approximately equal number of positive, negative, and neutral or mixed reviews.[2] (Doc. No. 17-5.) The plaintiff's

---

[2] Some of the comments are duplicated within the exhibit. For example, the same comment—entitled "Loved the job. Company not so good."—appears at least five times, at

Exhibit B (Doc. No. 17-2) consists of just eight of the comments also contained in Exhibit E, selected for emphasis by the plaintiff, presumably because they pertain in some way to overtime hours, overtime pay, or working off the clock. The reviews in Exhibit B include the following language:

- "You are made to work off clock because site mgr changes your hours to appease administration." Comment by "Staff RN (Former Employee) – Statesville, NC – September 17, 2017." (Doc. Nos. 17-2, at 2, and 17-5, at 5.)

- "You are overworked but are not allowed to work OT, [n]or will they send help, but if you get behind, they light your tail up. You are expected to work off the clock in order to get caught up." Comment by "RN Staff Nurse (Current Employee) – Anderson, SC – August 12, 2016." (Doc. Nos. 17-2, at 3, and 17-5, at 5–6.)

- "You are not allowed to work over AT ALL. [I]f you do end up having to work over, they can not approve your overtime and not pay you for it. There is way to [sic] much to get done in the time you have to do it all." Comment by "Med Tech (Former Employee) – [C]hattanooga, TN – February 21, 2015." (Doc. Nos. 17-2, at 5, and 17-5, at 13.)

- "Work for 14 hours a day and management removes your overtime from payroll the [sic] threatens to write u up for working over! If there is an emergency you can't just walk out they know that but want you to work for free!" Comment by "Registered Nurse Medical Team Administrator (Former Employee) – Hillsborough, NC – April 9, 2014" (Doc. Nos. 17-2, at 7, and 17-5, at 16.)

- "There is NO overtime so this means if you are a RN . . . and have staff members that are out and you end up covering a shift you do not get paid for it. If you are a LVN [Licensed Vocational Nurse] or LPN . . . and have to cover a shift over 40 hours you do not get time and a half for it, you will get half time." Comment by "staff nurse (Current Employee) – S.C. – February 10, 2013." (Doc. No2. 17-2, at 8, and 17-5, at 19.)[3]

---

pages 2, 9, 15, 21, and 26 of the exhibit. The court did not catalog the remainder but presumes there are other duplicates as well.

[3] Two additional reviews included in Exhibit B state only that no overtime is permitted (Doc. No. 17-2, at 4, 9), without further elaboration. These are not relevant to the plaintiff's claims of working "off the clock." In another comment, a former employee complains that, as a salaried RN, she (or he) worked overtime but did not get "comp time" and was told that she could not work on the clock for more than 16 hours in a shift. These comments, even if true, are

Medley filed this lawsuit on January 12, 2017 and seeks to maintain it as an "opt-in" collective action under 29 U.S.C. § 216(b). On April 19, 2017, she filed her Motion to Certify along with her Declaration and various exhibits, including Exhibits B and E, referenced above. She has also attached paystubs dating from December 28, 2014 through September 3, 2016 (Exhibit C, Doc. No. 17-3) and an SHP Employee Manual (Exhibit D, Doc. No. 17-4).

The defendant filed its Brief in Opposition (Doc. No. 19), supported by the Declaration of Katie Utz, SHP's Senior Vice President for Human Resources. In pertinent part, Utz asserts that:

> (1) SHP "requires that all nonexempt employees perform work on the clock and be paid overtime in compliance with the [FLSA]." (Utz Decl. ¶ 4.)
>
> (2) In accordance with its Employee Manual, SHP "prohibits managers and supervisors from requiring or permitting employees to work off the clock." (Utz Decl. ¶ 5.)
>
> (3) The United States Department of Labor approved SHP's Fluctuating Overtime Policy. (Utz Decl. ¶ 7.)
>
> (4) SHP's leave policies, including the paid time off policy, jury duty leave policy, extra holiday pay policy, and bereavement leave policy, do not pertain to exempt salaried employees or to non-exempt salaried employees paid under SHP's Fluctuating Overtime Policy. (Utz Decl. ¶ 13.)
>
> (5) Medley was hired in September 2013 to work at the Wayne County Jail and was initially characterized as an hourly employee. (Utz Decl. ¶ 8.)
>
> (6) On August 27, 2015, Medley became classified as a non-exempt salaried employee and began being paid under SHP's Fluctuating Overtime Policy. (Utz Decl. ¶ 12.)
>
> (7) At that time, she received a copy of the Medical Team Administrator-LPN job description, which provided that she was salaried, non-exempt, and paid in accordance with the Fluctuating Overtime Policy. (Utz Decl. ¶ 12.)
>
> (8) Since becoming a salaried non-exempt employee, Medley has not had any deductions taken from her pay under SHP's leave policies. (Utz Decl. ¶ 14.)

---

not relevant to the plaintiff's claim of being improperly classified as working a fluctuating work week or being forced to work off the clock as a non-exempt LPN.

The plaintiff filed a Reply Brief. (Doc. No. 23.) The Motion to Certify has been fully briefed and is ripe for review.

**B.      Standard for Conditional Certification**

The FLSA governs the payment of minimum wages and overtime to employees. 29 U.S.C. §§ 206, 207. In addition to individual actions for violations of its provisions, it authorizes collective actions to "be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Because the statute only requires that employees be "similarly situated," plaintiffs seeking to certify a collective action under the FLSA face a lower burden than those seeking to certify a class action under Rule 23 of the Federal Rules of Civil Procedure. *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell–Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). Once a collective action is certified, however, employees seeking to join the class must opt into the litigation by filing a written consent with the court. 29 U.S.C. § 216(b).

The FLSA does not define the term "similarly situated." However, the Sixth Circuit has held that "it is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. Employees may also be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* Indeed, "[s]howing a 'unified policy' of violations is not required [for certification]." *Id.* at 584.

Typically, courts employ a two-phase inquiry to address whether the named plaintiffs are similarly situated to the proposed opt-in plaintiffs. *Comer v. Wal–Mart Stores, Inc.*, 454 F.3d

544, 546 (6th Cir. 2006); *O'Brien*, 575 F.3d at 583. "The first [phase] takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Comer*, 454 F.3d at 546 (internal quotation marks and citation omitted).

At the first stage, the plaintiff bears the burden of showing that the employees in the class are similarly situated. *Shabazz v. Asurion Ins. Serv.*, No. 3:07-0653, 2008 WL 1730318, at *3 (M.D. Tenn. April 10, 2008). At that point, "'the certification is conditional and by no means final.' The plaintiff must show that 'his position is similar, not identical, to the positions held by the putative class members.'" *Comer*, 454 F.3d at 546–47 (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). In *Comer*, the Sixth Circuit approvingly quoted the lower court's decision, which stated that conditional certification "'need only be based on a modest factual showing,'" *Comer*, 454 F.3d at 547 (quoting *Pritchard*, 210 F.R.D. at 596), and that the court should use "'a fairly lenient standard [that] typically results in 'conditional certification' of a representative class.'" *Comer*, 454 F.3d at 547 (quoting *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)).

Although the required factual showing is "modest," it "cannot be satisfied simply by unsupported assertions." *Keenum v. Lott Enters., Inc.*, No. 2:14-cv-02504, 2014 WL 11369832, at *2 (W.D. Tenn. Nov. 25, 2014). The named plaintiff "must present some factual support for the existence of a class-wide policy or practice" that violates the FLSA. *Tyler v. Taco Bell Corp.*, No. 2:15-cv-02084, 2016 WL 2344229, at *3 (W.D. Tenn. May 3, 2016) (citation omitted). *See also Olivo v. GMAC Mortgage Corp.*, 374 F.Supp.2d 545, 548 (E.D. Mich. 2004) (to meet the "modest factual showing" standard, "Plaintiffs must simply submit evidence establishing at least a colorable basis for their claim that a class of similarly situated plaintiffs exist[s]." (internal

quotation marks and citation omitted)). However, "[t]he fact that a defendant submits competing declarations will not as a general rule preclude conditional certification." *Keenum*, 2014 WL 11369832, at *2 (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) (explaining that plaintiffs may meet the lenient standard "by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary")).

In short, "[a]t the notice stage, all that is required is substantial allegations supported by declarations, and once the plaintiff has met that burden, the case may be conditionally certified as a collective action, regardless of what exemptions the defendant wishes to assert at a later time." *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 373 (E.D. Tenn. 2006). If the named plaintiffs show that employees in the proposed class are similarly situated, "[t]he district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." *Comer*, 454 F.3d at 546.

After discovery, the defendant may move for decertification of the conditional class. *See O'Brien*, 575 F.3d at 583; *Shabazz*, 2008 WL 1730318, at *3 (citing *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007)). At this second stage, the court has access to more information and employs a "stricter standard" in deciding whether class members are, in fact, similarly situated. *Comer*, 454 F.3d at 547. Here, the motion concerns only the first of these two phases.

### C.    Analysis

The Complaint asserts two separate claims under the FLSA: (1) a claim based on SHP's allegedly forcing the plaintiff and other similarly situated employees to work "off the clock" rather than accruing overtime hours, meaning they worked without being paid and, in particular,

without being paid overtime wages; and (2) a claim based on SHP's allegedly improper application of the fluctuating work week method of calculating overtime pay, under 29 C.F.R. § 778.114(a). The court will address each separately.

### 1.    *"Off the Clock" Claim*

The plaintiff alleges that she was personally forced to work after she had clocked out and that her supervisor, at times, physically altered her time records to redact overtime hours. Because she also alleges that she is a non-exempt employee, this type of activity, if proven, would clearly violate the FLSA. 29 U.S.C. §§ 207(a), 211(c). The Complaint therefore states a colorable claim on behalf of the plaintiff individually. The question posed by the plaintiff's Motion to Certify is whether she may pursue her claims in the form of a collective action based on an alleged policy or practice of "routinely forc[ing] employees to work 'off the clock.'" (Doc. No. 17, at 5.)

In support of her claim that similarly situated employees exist who should be permitted to opt into this action, the plaintiff submits that she "easily meets the similarly situated standard" (Doc. No. 17, at 15), pointing to her own Declaration and to Exhibits B and E. SHP objects to the admissibility of the reviews included in Exhibit B and paragraphs 10 and 11 of Medley's Declaration, based largely on the fact that the statements are hearsay or are not based on personal knowledge. It further argues that, without that evidence, the plaintiff cannot satisfy her burden of showing the existence of similarly situated employees.

As for the objection based on hearsay, this court has repeatedly held, and holds again, that it is not limited to considering only admissible evidence when reviewing a motion for conditional class certification under 29 U.S.C. § 216(b). As the court has previously stated:

> Some districts have considered hearsay at this stage, whereas others have not. As this court previously held . . . , the court need not limit its consideration of the

"modest factual showing" [required for conditional certification] to admissible evidence only . . . . Generally, the courts holding otherwise have not explained why they excluded inadmissible testimony at this stage. Motions for conditional certification are generally based on a limited factual record, at best, and are not dispositive of the claims at issue, making it unclear to this court why the Rule 56 standard should apply.

*Potts v. Nashville Limo & Transp., LLC*, No. 3:14-CV-1412, 2015 WL 4198793, at *6 (M.D. Tenn. July 10, 2015) (citing *Watson v. Adv. Dist. Servs., LLC*, 298 F.R.D. 558, 563 n.5 (M.D. Tenn. 2014) (collecting cases); *Rogers v. HCA Health Servs. of Tenn., Inc.*, No. 3:09-cv-1173, 2013 WL 3224026, at *2 (M.D. Tenn. June 25, 2013); *White*, 236 F.R.D. at 369). SHP provides no persuasive rationale for changing course.

That conclusion does not mean that the challenged evidence is automatically admissible or should be considered to provide support for the plaintiff's claims, however. Although the court may consider evidence that is not necessarily admissible under the evidentiary rules in determining whether the plaintiff makes the "modest factual showing" required for conditional certification, the declarations or affidavits submitted by a plaintiff in support of her motion must nonetheless be "based on personal knowledge and seem reasonably likely to reflect information that the employee would have learned in the course of his or her employment." *Potts*, 2015 WL 4198793, at *6; *see also White*, 236 F.R.D. at 369 ("The Court's determination that affidavits in support of motions for conditional certification need not meet all evidentiary standards for admissibility at trial does not mean that such affidavits need not meet *any* standards. On the contrary, affidavits submitted at the notice stage must be based on the personal knowledge of the affiant.").

In *White*, the plaintiff submitted several affidavits and declarations from current and former employees of the defendant. The defendant moved to exclude from consideration statements in three of the affidavits that, the defendant argued, were not based on the affiants'

personal knowledge. In the paragraphs to which the defendant objected, the three affiants stated that the defendant's "policy of not compensating employees for travel within a 75-mile radius is company wide." 236 F.R.D. at 369. The court concluded that, although the referenced paragraphs did not "explicitly set forth the circumstances under which the affiants came to know this information," the court could reasonably infer from the other evidence submitted that the three affiants, as employees of the defendant, "would have learned during the normal course of their employment how the company operates and what the company's policies were" and, therefore, that the statements were "based on personal knowledge, albeit perhaps hearsay." *Id.*

In *Potts*, the court noted that, while hearsay would not necessarily be excluded from consideration on a motion for conditional certification, the court could nonetheless "take into account the reasons why the information would be inadmissible" in "assessing the reliability of information provided by an affiant." *Potts*, 2015 WL 4198793, at *6. The court explained:

> For example, if an affiant avers that Jane Doe had told her (the affiant) that John Doe worked for NL & T and was not paid minimum wage, the court would likely give the statement little to no weight because it is double hearsay and is not based on the affiant's own workplace-related observations. Similarly, if an affiant makes an assertion that lacks plausibility without supporting facts, such as the bare assertion that she has "personal knowledge" concerning employees at facilities in other cities (as opposed to employees at her own facility), the court likely would not rely on that statement.

*Id.* at *6 n.7.

Here, although Medley avers in her Declaration that she "personally knew" other employees who were "forced to work off the clock" or "told to falsify their time records," she does not identify these other employees or explain how she knew them, when she knew them, or where they worked—whether at her same facility or a different facility or facilities. Moreover, SHP has submitted evidence indicating that Medley has only ever worked at the Wayne County Jail and is apparently the only full-time nurse who has worked there during her tenure. SHP pays

other nurses to work part-time shifts for a few hours on both Saturday and Sunday, every other weekend. (Utz Decl. ¶ 11.) Medley does not contest this evidence. It therefore appears unlikely that Medley has had much contact with other nurses or medical personnel placed at the Wayne County Jail who were similarly situated to Medley, and Medley does not explain how she would have come in contact with employees at other facilities or how she had the opportunity to personally observe their working conditions.

In other words, Medley's declaratory statement that she is "aware of other employees" is even less plausible than that of the hypothetical affiant referred to in *Potts*, *supra*. Moreover, the statement is not "reasonably likely to reflect information that [Medley] would have learned in the course of . . . her employment." *Potts*, 2015 WL 4198793, at *6. The court concludes that Medley's bare-bones, conclusory assertion that she "personally knew" other employees who were forced to work off the clock is insufficiently reliable to be considered even under the relatively lenient evidentiary standard application to motions for conditional certification. *Accord Swinney v. Amcomm Telecomms., Inc.*, No. 12-12925, 2013 WL 28063, at *7 (E.D. Mich. Jan. 2, 2013) (finding that the plaintiff "fail[ed] to meet the fairly lenient factual standard" because he offered a single declaration containing only "conclusory allegations" in support of his claim that other similarly situated employees existed); *Arrington v. Mich. Bell Tel. Co.*, No. 10-10975, 2011 WL 3319691, at *6 (E.D. Mich. Aug. 1, 2011) (finding that the plaintiffs "failed to meet the modest requirement that they show that other First Level Managers would be similarly-situated because they provide nothing more than conclusory allegations. . . . [T]he plaintiffs have provided no evidence of common treatment beyond the two experiences of Arrington and Nagy and their beliefs that other First Level Managers are not being compensated for overtime work. Although . . . their beliefs are set forth in signed declarations, the plaintiffs have pointed to no

evidence at all that could support their argument that other First Level Managers are similarly situated."); *H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (denying motion for conditional certification where the plaintiffs "failed to identify potential plaintiffs, submit affidavits of potential plaintiffs or submit any other evidence that might show a widespread plan of discrimination existed" and instead submitted only "affidavits making conclusory allegations"). The court therefore will not rely on or consider Medley's statement in paragraph 10 of her Declaration in support of her claim that she is similarly situated to other SHP employees who are forced to work off the clock.

This leaves only the plaintiff's Exhibit B for consideration. The defendant contends that Exhibit B should be excluded from consideration because it consists of inadmissible, unauthenticated hearsay or, insofar as the statements are repeated by the plaintiff in her Declaration, double hearsay. The court agrees that these documents are insufficiently reliable to be taken into consideration, even applying the "fairly lenient standard," which, as the Sixth Circuit has recognized, "typically results in . . . certification.'" *Comer*, 454 F.3d at 547.

The problem is not necessarily that the documents are unauthenticated or hearsay, *per se*. For purposes of her Motion to Certify, the plaintiff's Declaration adequately establishes that the documents are what she says they are: a printout, or excerpts from a printout, from the job website, Indeed.com, showing reviews of SHP written by persons who purport to be current or former employees of SHP. But, even assuming the documents are what the plaintiff says they are, the reviews themselves are hearsay that bear no indicia of reliability. They are unsworn, anonymous statements, and the plaintiff does not claim to know any of the review writers personally or even to know their identity. She cannot attest that the reviews were actually written by current or former employees of SHP, and she has not personally observed the working

conditions of the facilities at which the reviewers worked. While recognizing, again, that the Federal Rules of Evidence do not necessarily apply to documents and evidence submitted in support of a motion for conditional certification, the court nonetheless finds that the plaintiff's Exhibit B is so completely devoid of reliability that it cannot be taken into consideration.

The plaintiff offers no other evidence to support her claim that similarly situated employees exist who, like her, have been forced to work off the clock. Consequently, she has not made even the "modest factual showing" required to support her bid to bring a collective action on behalf of such similarly situated employees. The court will, therefore, deny the motion to conditionally certify a class consisting of current and former SHP employees who were forced to work off the clock.

### 2. *Fluctuating Work Week Claim*

Generally, under the FLSA, covered employers[4] must pay their employees at least a specified minimum wage for each hour worked and overtime pay in the amount of not less than one and one-half times the employees' regular rate for hours worked in excess of forty in a workweek, unless an exemption applies. 29 U.S.C. §§ 206, 207(a)(1).

Employees who work a so-called "fluctuating work week" are paid overtime calculated in accordance with a particular regulatory interpretation of § 207(a). Under 29 C.F.R. § 778.114(a), an employer may pay a modified overtime amount to any employee who works a fluctuating work week if: (1) the employee's hours fluctuate from week to week; (2) the employee receives a fixed salary that does not vary with the number of hours worked during the week (excluding overtime premiums); (3) the fixed salary must be sufficient to provide compensation every week at a regular rate that is at least equal to the minimum wage; and (4) the employee and employer

---

[4] A covered employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

must share a "clear mutual understanding" that the employer will pay that fixed salary regardless of the number of hours worked. *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725, 734 (S.D. Ohio 2006), *aff'd*, 225 F. App'x 362 (6th Cir. 2007).

If all those requirements are satisfied, then the employer may be paid in accordance with the formula described in 29 C.F.R. § 778.114(a): (1) the employee receives a weekly salary as compensation for all hours worked, whether more or less than forty; (2) if the salaried employee works more than forty hours in a week, her salary is divided by the total number of hours worked that week to determine the "regular rate" of pay for that week; and (3) the employee must receive additional compensation equal to half the "regular rate" of pay for each hour worked that week in excess of forty. *Id.* This method of calculating overtime pay recognizes that the employee, by receiving a salary for all hours worked, is paid her "regular rate" of pay for all hours worked in a given week, including the hours over forty. Because she has been paid a "regular rate" for all hours worked, plus one-half that rate for hours over forty, the employee receives one and one-half times her "regular rate" of pay for each hour worked in excess of forty, as is required under the FLSA. *Id.*; *see also Mitchell*, 428 F. Supp. 2d at 733 n.12. "Although the [fluctuating work week] method occasionally is mischaracterized as an alternative to, or an exemption from, the FLSA's requirement of time-and-a-half for overtime, it is in actuality an interpretation of that requirement, as applied to a particular factual scenario." *Hunter v. Sprint Corp.*, 453 F. Supp. 2d 44, 58 (D.D.C. 2006).

The regulations illustrate this method with the case of an employee working a fluctuating work week,

> whose total weekly hours of work never exceed 50 hours in a workweek, and whose salary of $600 a week is paid with the understanding that it constitutes the employee's compensation, except for overtime premiums, for whatever hours are worked in the workweek. If during the course of 4 weeks this employee works 40,

> 37.5, 50, and 48 hours, the regular hourly rate of pay in each of these weeks is $15.00, $16.00, $12.00, and $12.50, respectively. Since the employee has already received straight-time compensation on a salary basis for all hours worked, only additional half-time pay is due [for overtime]. For the first week the employee is entitled to be paid $600; for the second week $600.00; for the third week $660 ($600 plus 10 hours at $6.00 or 40 hours at $12.00 plus 10 hours at $18.00); for the fourth week $650 ($600 plus 8 hours at $6.25, or 40 hours at $12.50 plus 8 hours at $18.75).

29 C.F.R. § 778.114(b). The Sixth Circuit recognizes that the FLSA permits the implementation of a fluctuating work week payment arrangement, even though it "results in lower earnings per hour as the number of hours per week increases." *Highlander v. K.F.C. Nat'l Mgmt. Co.*, 805 F.2d 644, 647 (6th Cir. 1986).

Medley alleges that SHP's Fluctuating Overtime Policy was improperly implemented in her case and in that of other similarly situated SHP employees. According to Medley, SHP did not satisfy the requirements for paying her under a fluctuating work week arrangement because she was not paid "a fixed salary regardless of the number of hours worked," and there was no clear and mutual understanding . . . that employees were paid a fixed salary for all hours worked regardless of their number." (Compl. ¶¶ 21, 22.)

More specifically, Medley alleges that SHP's leave policies pertaining to PTO, reimbursement of PTO, reduction of pay in the amount of jury duty fees, extra holiday pay, and unpaid bereavement leave "prevent [SHP] from claiming that it paid employees a fixed salary" and "foreclose the possibility of the 'clear and mutual understanding' necessary" to satisfy the requirements for using the fluctuating work week method of overtime pay. (Compl. ¶ 23.) As a result, the plaintiff asserts that, when she or similarly situated employees worked more than forty hours per week, SHP did not fully compensate them for overtime. (Compl. ¶ 25.)

Medley's claim is based on the language of the Employee Manual outlining SHP's leave policies. For example, the PTO policy states:

> Only the amount of PTO earned and accumulated up to the time it is requested will be paid out. If an employee requests more PTO than has been accumulated and it is approved or paid inadvertently, the overpayment will be deducted from the employee's pay as soon as the overdraw is identified.

(Doc. No. 17-4, at 21; *see also* Medley Decl. ¶ 18 ("As an employee, I was given a set number of days off (PTO). If I exceeded the amount of PTO that I had, my pay was deducted.").) The SHP Employee Manual states that its PTO program pertains to "all regular full-time employees (working 30 hours or more per week)" who meet the eligibility requirements. (Doc. No. 17-4, at 21.) Medley asserts that putting this kind of cap on the amount of time an employee is allowed to be absent with pay is a violation of the regulation governing salary payments for a fluctuating work week. (Doc. No. 17, at 9 (citing 29 C.F.R. § 778.114(a)).) She also claims that the fact that SHP has such a policy in place affirms that there was no "clear mutual understanding" that the employee was to receive a fixed salary that does not vary with the number of hours worked during the week (excluding overtime premiums). (*Id.* at 10–11 (citing *Hunter v. Sprint Corp.*, 453 F. Supp. 2d 44, 59–60 (D.D.C. 2006)).) The plaintiff alleges that she meets the "similarly situated" requirement with respect to this claim, because SHP's leave policies "applied to numerous employees who were paid under the fluctuating work week" method. (Doc. No. 17, at 15.)

SHP responds that (1) the plaintiff does not actually allege that she suffered deductions from her salary based on SHP's leave policy; and (2) the policies about which the plaintiff complains do not violate the FLSA, do not apply to employees paid pursuant to SHP's Fluctuating Overtime Policy, and did not cause the plaintiff or any other employee to experience salary deductions. Katie Utz avers in her Declaration that SHP's PTO policy, jury duty leave policy, holiday pay policy, and bereavement leave policy "do not apply to exempt employees or to non-exempt salaried employees paid pursuant to the Fluctuating Overtime Policy." (Utz Decl.

¶ 13.) Utz also asserts that Medley has never taken leave for jury duty or bereavement since becoming a non-exempt LPN salaried employee in August 2015 and has not had any deductions made from her pay relating to any of SHP's leave policies. (Utz Decl. ¶¶ 14–15.)

On its face, the PTO policy appears to apply to all employees, salaried and non-salaried, despite Utz's contention that it applies only to hourly employees. The plaintiff alleges, without providing specific dates or details, that her pay was deducted if she exceeded the amount of accrued PTO. Katie Utz avers, to the contrary, that the plaintiff's salary was never reduced as a result of the application of the PTO policy. The plaintiff's payroll records, submitted by the plaintiff, do not document any deductions based on the use of unaccrued PTO, but the records are incomplete, dating only from December 14, 2014 through September 3, 2016, with some paystubs from within that time frame missing as well. (Doc. No. 17-3.) Based on the plaintiff's Declaration and the fact that discovery has not concluded, the court accepts as true, for purposes of the plaintiff's Motion to Certify, that SHP deducted some portion of the plaintiff's salary as a result of her taking unaccrued PTO leave.

The court also finds that the plaintiff's allegation in that regard states a colorable claim under the FLSA. As another district court presented with a similar scenario stated:

> Sprint maintained a policy that, unless an employee utilized earned leave (*e.g.*, vacation or "floating holiday" time), it would deduct a full or partial day's pay in the event that either (1) the employee was required to attend a court proceeding as a defendant or witness, or (2) the employee was unable to report to work due to inclement weather. The unavoidable implication of this policy is that an employee who had exhausted his leave bank (or not accrued sufficient leave time) would have been docked by Sprint for such missed time.
>
> That is precisely the sort of arrangement that the Department of Labor has found to be inconsistent with use of the FWW [fluctuating work week] method. In a 1999 opinion letter, the Department reviewed the following employer policy: "If the employee is absent from work for a full day to take care of personal business, the employer will charge one day's vacation against the employee's accrued vacation, [but if] the employee has not accumulated any vacation days, the

employer may dock their salary 1/7th of their weekly salary amount." Op. Letter of the Wage & Hour Div., 1999 WL 1002415 (May 28, 1999). Upon review of that policy, the Department "d[id] not agree that [the employer] may meet [its] overtime pay obligations by use of the fluctuating workweek" under those circumstances. *Id.* It further explained that—with limited exceptions for disciplinary deductions (the example given being an employee sent home from work because of drunkenness)—"[d]eductions for absences for personal business or routine sickness generally *may not* be made from the salary of an employee paid on a fluctuating workweek basis." *Id.* (emphasis supplied). Likewise, the Department advised an employer in another opinion letter that, when it pays overtime using the FWW method, "*deductions may be made from vacation or sick leave banks* because of absences for personal reasons or illness, as long as *no deductions are made from an employee's salary*," and further advised that wage deductions remain impermissible under the FWW regulation when "there is no paid leave to substitute for employee absences." Op. Letter of the Wage & Hour Div., 1999 WL 1002399 (May 10, 1999) (emphasis supplied). . . . The Department's opinion, which the Court finds persuasive, is unambiguous on this point: employers who use the FWW method of compensation must compensate their employees in full, notwithstanding absences for personal reasons, even if the employee has not accrued sufficient leave  time to cover the absence. *See also* Op. Letter of the Wage & Hour Div., 2006 WL 1488849 (May 12, 2006) ("[An employer] may not make full day deductions from the salary of its fluctuating workweek employees when the employee has exhausted his or her sick leave bank or has not yet earned enough leave to cover the absence.").

*Hunter v. Sprint Corp.*, 453 F. Supp. 2d 44, 60–61 (D.D.C. 2006) (internal citation to court record omitted).

Having reached the conclusion that the plaintiff states a colorable claim individually, the court must determine whether she states a claim on behalf of similarly situated employees for purposes of bringing a collective action. The plaintiff alleges only that the existence of the written PTO and other leave policies, *per se*, in conjunction with SHP's acknowledged practice of paying its LPNs based on a fluctuating work week, is sufficient to establish the existence of a class of similarly situated employees. She does not, however, allege in her Declaration that she is personally aware of other LPNs paid on the basis of a fluctuating work week whose salaries were improperly reduced based on application of SHP's PTO policy or other leave policies. She has not submitted the declarations of other employees attesting that their salaries were improperly

reduced or that, as a result, their overtime pay was improperly calculated under SHP's Fluctuating Overtime Policy. On the other hand, SHP has submitted a declaration attesting that its PTO and other leave policies do not apply to exempt or non-exempt salaried SHP employees. (Utz Decl. ¶ 13.)

In other words, regardless of how the PTO policy was applied to the plaintiff and regardless of its admittedly ambiguous wording, there is no evidence before the court that it or any of SHP's other leave policies were actually applied to any other employees paid under SHP's Fluctuating Overtime Policy. Under these circumstances, even applying the "modest factual showing" standard, the court again finds that the plaintiff has not submitted sufficient evidence to support her claim that a class of similarly situated employees exists for purposes of pursuing her claim as a collective action.

## III.   CONCLUSION

For the reasons set forth herein, the defendant's Motion to Strike (Doc. No. 20) and the plaintiff's Motion to Certify (Doc. No. 16) will both be denied. An appropriate order is filed herewith.

ENTER this 15th day of August 2017.

ALETA A. TRAUGER
United States District Judge